UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SAMMIE ELAINE SMITH,

     Plaintiff,

v.                                                                    Case No. 3:21-cv-881-MAP

COMMISSIONER OF SOCIAL SECURITY,

     Defendant.

_____/

## ORDER

Plaintiff seeks judicial review of the denial of her claim for disability insurance benefits (DIB).[1]  Plaintiff argues that the Administrative Law Judge (ALJ) committed reversible error by failing to properly consider the medical evidence and opinions of record regarding Plaintiff's subjective complaints in setting forth Plaintiff's RFC and by failing to properly consider Plaintiff's vocational limitations in determining that Plaintiff could perform other work.  As the ALJ's decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

    *I.*    *Background*

Plaintiff, who was born in 1977, claimed disability beginning June 1, 2019 (Tr.

---

[1]  The parties have consented to my jurisdiction.  *See* 28 U.S.C. § 636(c).

140).[2]  She was 42 years old on the alleged onset date.  Plaintiff completed two years of college, and her past relevant work experience included work as a recreation aide and teacher's aide (Tr. 27-28, 47, 158).  Plaintiff alleged disability due to hypothyroidism and fibromyalgia (Tr. 157).

Given her alleged disability, Plaintiff filed an application for DIB (Tr. 140-46). The Social Security Administration (SSA) denied Plaintiff's claims both initially and upon reconsideration (Tr. 54-86).  Plaintiff then requested an administrative hearing (Tr. 92-93).  Per Plaintiff's request, the ALJ held a telephonic hearing at which Plaintiff appeared and testified (Tr. 34-53).  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 17-33).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through June 30, 2020, and had not engaged in substantial gainful activity from her alleged onset date of June 1, 2019 through her date last insured of June 30, 2020 (Tr. 22).  After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: obesity, fibromyalgia, generalized anxiety disorder, hypothyroidism, and obsessive-compulsive disorder (OCD) (Tr. 22).  Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or

---

[2]  In her application, Plaintiff alleged that she became disabled as of July 1, 2019 (Tr. 140). The ALJ identified June 1, 2019, as the alleged onset date (Tr. 20, 22), and Plaintiff does not argue that she was prejudiced by the error, rendering such error harmless.

combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 22). The ALJ then concluded that Plaintiff retained a residual functional capacity (RFC) to perform light work with the following exceptions: occasional climbing, balancing, stooping, kneeling, crouching, and crawling; should have no concentrated exposure to vibrations, work around moving mechanical parts, or work unprotected heights; was limited to performing work that needed little to no judgment to do simple duties that could be learned on the job in a short time (up to and including 30 days); was able to deal with changes in a routine work setting and was limited to work settings that did not require production-paced work; and was able to relate adequately to supervisors with occasional coworker and general public contact (Tr. 24). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 25).

Considering Plaintiff's noted impairments and the assessment of a vocational expert (VE), the ALJ determined that Plaintiff could not perform her past relevant work (Tr. 27-28). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a marker-pricer, a folder, and a bagger (Tr. 28-29). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found

Plaintiff not disabled (Tr. 29).  Given the ALJ's finding, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-6, 136-39). Plaintiff then timely filed a complaint with this Court (Doc. 1).  The case is now ripe for review under 42 U.S.C. § 405(g).

## II.    Standard of Review

To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. § 423(d)(1)(A).   A "physical or mental impairment" is an "impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 404.1520.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a).  Under this process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful activity;  whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions;  whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P,

4

Appendix 1; and whether the claimant can perform his or her past relevant work.  20 C.F.R. § 404.1520(a)(4).  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience.  20 C.F.R. § 404.1520(a)(4)(v).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. § 405(g).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision.  *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for

determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam) (citations omitted).

   III.   *Discussion*

   Plaintiff's argument here is twofold: (1) the ALJ failed to properly consider the medical evidence and opinions of record regarding Plaintiff's physical and mental subjective complaints in determining Plaintiff's RFC, and (2) as a result, the ALJ failed to properly consider and incorporate all of Plaintiff's vocational limitations in concluding that Plaintiff could perform other work. More specifically, Plaintiff contends that the ALJ failed to properly evaluate evidence and opinions from Dale Intihar, M.D., regarding Plaintiff's physical limitations and from Frank G. Stanley, Ph.D., regarding Plaintiff's mental limitations as well as the opinions from the state agency medical consultants regarding Plaintiff's limitations. Given such failure, Plaintiff asserts that the ALJ failed to properly incorporate all of Plaintiff's limitations into the RFC and the hypotheticals to the VE. Since the RFC and hypotheticals to the VE did not account for all of Plaintiff's physical and mental limitations, Plaintiff argues that the VE's testimony cannot constitute substantial evidence in support of the ALJ's finding that Plaintiff could perform other work. As the decision reflects, however, the ALJ properly considered the evidence of record, including the medical opinion

evidence, regarding Plaintiff's physical and mental limitations and incorporated the limitations supported by the record in determining Plaintiff's RFC and posing hypotheticals to the VE.

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545. To determine a claimant's RFC, an ALJ makes an assessment based on all the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. § 404.1545(a)(1). In rendering the RFC, therefore, the ALJ must consider the medical opinions in conjunction with all the other evidence of record and will consider all the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2) & (e); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole"). In doing so, the ALJ considers evidence such as the claimant's medical history; medical signs and laboratory findings; medical source statements; daily activities; evidence from attempts to work; lay evidence; recorded observations; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication or other treatment the claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures the claimant uses or has used to relieve pain or symptoms; and any other

factors concerning the claimant's functional limitations and restrictions.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 404.1545(a)(3); Social Security Ruling (SSR) 96-8p, 1996 WL 374184 (July 2, 1996); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).

As indicated, in addition to the objective evidence of record, the Commissioner must consider all the claimant's symptoms,[3] including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence and other evidence.  *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2017 WL 5180304, at *2. A claimant's statement as to pain or other symptoms shall not alone be conclusive evidence of disability.  42 U.S.C. § 423(d)(5)(A).  Rather, to establish a disability based on testimony of pain and other symptoms, the claimant must establish evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged pain or (2) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.  *Wilson*, 284 F.3d at 1225. Consideration of a claimant's symptoms therefore involves a two-step process, wherein the SSA first considers whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the claimant's symptoms, such as pain.  20 C.F.R. § 404.1529(b); SSR 16-3p, 2017 WL 5180304, at *3-9.  If the SSA determines that an underlying physical or mental impairment could reasonably be expected to produce the claimant's symptoms, the SSA evaluates the intensity and persistence of those symptoms to determine the extent

---

[3]  The regulations define "symptoms" as a claimant's own description of his or her physical or mental impairment.  20 C.F.R. §§ 404.1502(i), 416.902(n).

to which the symptoms limit the claimant's ability to perform work-related activities. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *3-9. When the ALJ does not find the claimant's subjective testimony supported by the record, the ALJ must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225 (citation omitted). A reviewing court will not disturb a clearly articulated finding regarding a claimant's subjective complaints supported by substantial evidence in the record. *Mitchell*, 771 F.3d at 782.

Here, the ALJ found that Plaintiff's obesity, fibromyalgia, generalized anxiety disorder, hypothyroidism, and OCD constituted severe impairments (Tr. 22). Considering Plaintiff's impairments and the limitations stemming therefrom, the ALJ determined that Plaintiff retained the RFC to perform a reduced range of light work, as set forth more fully above, and that, although Plaintiff's impairments could reasonably be expected to cause Plaintiff's alleged symptoms, Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence or other evidence (Tr. 24-26). In doing so, the ALJ discussed Plaintiff's subjective complaints and the medical evidence relating to Plaintiff's physical and mental impairments along with the medical opinions from Dr. Intihar and Dr. Stanley and the medical opinions from the following state agency medical consultants: Shakra Junejo, M.D.; Steve Arkin, M.D.; George Grubbs, Psy.D.; and Jeffrey Pickett Psy.D. (Tr. 24-27).

As to Plaintiff's physical impairments, the ALJ discussed treatment records from Florida Healthcare Plan, Inc., and Dr. Intihar that showed, as of March 2019,

two months prior to the alleged onset date, Plaintiff presented for medication review and refills, after not having been seen in approximately 10 months, and demonstrated normal findings upon examination except for edema of both legs (Tr. 25, 324-26). Thereafter, in June 2019, Plaintiff underwent an ultrasound of her thyroid, which yielded normal results (Tr. 25, 322-23).  Later, in November 2019, Dr. Intihar saw Plaintiff at a follow-up appointment for preventive medicine and health management (Tr. 25, 298-309).  Despite normal findings upon examination, including no edema, normal gait, and a full range of motion of all extremities, Dr. Intihar assessed Plaintiff with abnormal weight gain, hypothyroidism, adjustment disorder with depressed mood, vitamin D deficiency disease, hyperparathyroidism, and chest discomfort and noted that Plaintiff's additional active problems included abnormal weight gain, acute bacterial sinusitis, anxiety, dry cough, eczema, edema of both legs, fatigue, feeling weak, fibromyalgia, hormone imbalance, pain in joint, polyarthropathy or polyarthritis of multiple sites, stress at work, thyroid illness, urinary tract infection, and visit for screening mammogram (Tr. 25, 301, 308).  As the ALJ pointed out, Dr. Intihar provided no further treatment to Plaintiff in 2020 prior to her date last insured on June 30, 2020 (Tr. 26, 383-426).

Instead, Plaintiff did not meet with Dr. Intihar again until December 2020, initially complaining about tiredness, fatigue, and hyperlipidemia but presenting with primarily unremarkable findings except for non-healing wounds on her legs (Tr. 26, 388-96).  Later that month, Plaintiff presented to Dr. Intihar for an initial evaluation for disability papers and demonstrated unremarkable findings upon examination,

including no edema, a full range of motion of all extremities, normal gait, and no wounds on her legs or otherwise (Tr. 26, 385-87).   Notwithstanding, Dr. Intihar submitted a medical opinion the same day regarding Plaintiff's ability to do work activities, opining that Plaintiff could occasionally lift and carry less than 10 pounds; could frequently lift and carry less than 10 pounds; could stand and walk less than two hours with normal breaks during an eight-hour workday; could sit less than two hours with normal breaks during an eight-hour workday; could sit for five minutes before needing to change position; could stand for five minutes before needing to change positions; would need to walk around every five minutes for a period of five minutes; would need the opportunity to shift at will from sitting or standing/walking; would need to lie down at unpredictable intervals during a work shift; could occasionally twist, stoop (bend), or climb stairs; could never crouch or climb ladders; was limited in her ability to reach, handle, finger, feel, push, and pull; must avoid concentrated exposure to wetness and hazards (machinery, heights, etc.); must avoid even moderate exposure to extreme cold, extreme heat, humidity, noise, or fumes, odors, dusts, gases, poor ventilation, etc.; and would need to be absent from work more than three times per month due to her impairments or treatment (Tr. 26, 368-70).

As the ALJ discussed, between Plaintiff's November 2019 and December 2020 appointments with Dr. Intihar, Plaintiff met with James Shoemaker, D.O., in January 2020 for a consultative examination at the request of the SSA (Tr. 25, 333-36).   Dr. Shoemaker noted that Plaintiff was claiming disability due to hypothyroidism, fibromyalgia, and anxiety with symptoms of anxiety, depression, weight gain, fatigue,

muscle aches, neck pain, back pain, and leg pain (Tr. 25, 333).  Upon examination, Dr. Shoemaker reported unremarkable findings except that Plaintiff appeared anxious and showed some paraspinal muscle tightness and tenderness in her cervical spine and trace nonpitting edema of her bilateral lower extremities (Tr. 25, 334-35).  Dr. Shoemaker diagnosed Plaintiff with anxiety, hypothyroidism, hypertension, and attributed diagnoses of fibromyalgia and hypodontia to statements from Plaintiff (Tr. 335-36).

The ALJ also discussed Plaintiff's treatment regarding her mental impairments and limitations (Tr. 25-26).  As the ALJ noted, Plaintiff presented to Diane Ramirez, Ph.D., for a consultative psychological examination at the request of the SSA in March 2020 (Tr. 25-26, 343-46).  Dr. Ramirez noted that the records she reviewed, primarily the notes of Dr. Shoemaker, indicated that Plaintiff suffered from anxiety and depression, was taking Xanax, had difficulty coping with daily activities, did not feel like getting out of bed sometimes, and had panic attacks and that Plaintiff indicated she was planning to admit herself to a psychiatric facility for two months for treatment (Tr. 343).  Dr. Ramirez observed that Plaintiff arrived on time and alone; drove to the appointment alone; provided all the information; dressed casually and was adequately groomed with adequate hygiene; was cooperative and had a positive attitude; was able to answer all questions with no difficulty; showed no speech or articulation deficits; rate of speech was normal; speech was loquacious; eye contact was adequate; psychomotor activity was normal; did not evidence difficulty with ambulation or gross motor skills; and showed no fine motor skills deficits, shaking, or weakness (Tr. 26,

343).  Mental status examination revealed that Plaintiff had a good mood; her affect was congruent with her mood; she was oriented to time, place, situation, and person; she showed adequate insight; her judgment was good; she had good immediate memory; she was able to recall 4 out of 4 words presented immediately; she had adequate recent memory; she was able to recall 3 out of 4 words a few minutes after presentation; she had good remote memory; her cognition appeared unimpaired; her receptive language appeared good; her expressive language appeared good; her written language appeared good; her attention and concentration were good; her intelligence was judged to be average; her thought process was clear, organized, and coherent; her thought content was relevant to the current topic; and her hand/eye coordination was adequate (Tr. 26, 345-46).  After conducting the mental status examination, Dr. Ramirez concluded that Plaintiff appeared to meet the criteria for Generalized Anxiety Disorder and Obsessive-Compulsive Disorder, as the presented symptom picture was consistent with the reported conditions (Tr. 26, 346).  Dr. Ramirez concluded that Plaintiff's prognosis was fair; the severity of Plaintiff's symptoms appeared to be mild, based on observation and client report; and should any benefits be determined, Plaintiff could manage her benefits (Tr. 346).

The only other mental health evidence provided was a neuropsychological evaluation conducted by Frank Stanley, Ph.D., at the request of Plaintiff's representative, notably after the date last insured (Tr. 26, 373-81).  Indeed, the dates of examination were identified as December 17, 2020, and January 13, 2021 (Tr. 373).  Dr. Stanley administered several tests of Plaintiff's functionality, finding that Plaintiff

performed more poorly than expected on several measures of her neuropsychological functioning (Tr. 26, 373-80). Following clinical interviews, a review of records, and the administration of several neuropsychological tests, Dr. Stanley opined:

> The clinical information and observations together with psychological testing suggest that [Plaintiff's] problems are psychological in nature. Her psychological problems might have begun with childhood sexual abuse which has resulted in a post-traumatic stress disorder. Personality testing suggesting a borderline personality disorder might be more reflective of her psychologically untreated post-traumatic stress disorder. The information for personality testing that indicates a schizoid personality disorder could be related to her social withdrawal due to her physical and emotional problems. Affective testing supports her complaints of high levels of generalized anxiety and depression. The testing also supports a diagnosis of post-traumatic stress disorder. She recently has been experiencing severe levels of generalized anxiety and depression which have not resolved with antianxiety and antidepressant medications. Her poor performance in several areas of the neuropsychological testing might be related to her sleep problems and chronic pain or more to a developing underlying psychotic process due to ineffectively treated depression. She could consult with a psychiatrist who reviews the present psychological evaluation and also addresses concerns about an underlying psychotic thought process secondary to depression and trauma. She also should actively participate in treatment with a clinical psychologist or a psychotherapist with special training in sexual trauma resolution. At the present time, she is severely impaired in her social functioning and in her neurocognitive and affective functioning. [Plaintiff] clearly cannot work an eight[-]hour day without interruptions from her fatigue, chronic pain, and psychological problems. She also likely will be absent several days when her symptoms increase or are exacerbated and to attend psychiatric and psychological appointments.

(Tr. 26, 381).

As the ALJ concluded, therefore, the evidence of record during the relevant period did not establish that Plaintiff's impairments prevented her from performing work in accordance with the limitations set forth in the RFC (Tr. 26-27). Indeed, the

ALJ appropriately highlighted Plaintiff's limited and conservative treatment with Dr. Intihar during the applicable period of adjudication as well as the largely normal physical examinations conducted by Dr. Intihar and Dr. Shoemaker (Tr. 27). Likewise, the ALJ correctly noted the lack of psychiatric treatment during the relevant period and the unremarkable findings set forth by Dr. Ramirez upon psychological examination (Tr. 27). The ALJ thus provided substantial evidence in support of his finding that Plaintiff's subjective complaints were not as significant as alleged and did not rise to the level of disabling.

Beyond that, after discussing the medical evidence of record, the ALJ addressed the medical opinions, providing further support for his findings (Tr. 27). Under the regulations, an ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative finding, including from a claimant's medical source. 20 C.F.R. § 404.1520c(a). Rather, in assessing a medical opinion, an ALJ considers a variety of factors, including but not limited to whether an opinion is well-supported, whether an opinion is consistent with the record, the treatment relationship between the medical source and the claimant, and the area of the medical source's specialization. 20 C.F.R. § 404.1520c(c)(1)-(4). The primary factors an ALJ will consider when evaluating the persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. § 404.1520c(a) & (b)(2). Specifically, the more a medical source presents objective medical evidence and supporting explanations to support the opinion, the more persuasive the medical opinion will be. 20 C.F.R. § 404.1520c(c)(1). Further, the more consistent the medical

opinion is with the evidence from other medical sources and nonmedical sources, the more persuasive the medical opinion will be.  20 C.F.R. § 404.1520c(c)(2).  And, in assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis – the regulations do not require the ALJ to explain the consideration of each opinion from the same source.  *See* 20 C.F.R. § 404.1520c(b)(1).  Beyond supportability and consistency, an ALJ may also consider the medical source's specialization and the relationship the medical source maintains with the claimant, including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether the medical source examined the claimant, in addition to other factors.  20 C.F.R. § 404.1520c(c)(3)(i)-(v), (4), & (5).  While the ALJ must explain how he or she considered the supportability and consistency factors, the ALJ need not explain how he or she considered the other factors.[4]  20 C.F.R. § 404.1520c(b)(2).

The ALJ first addressed the opinions from Dr. Junejo and Dr. Arkin, the state agency medical consultants considering Plaintiff's physical impairments and limitations (Tr. 27, 54-60, 70-74).  The ALJ found Dr. Junejo's opinion that Plaintiff had no severe physical impairments not persuasive considering the consultative examination performed by Dr. Shoemaker, reconsideration level opinion (issued after

---

[4]  The exception is when the record contains differing but equally persuasive medical opinions or prior administrative medical findings about the same issue.  *See* 20 C.F.R. § 404.1520c(b)(3).

Dr. Junejo's opinion), and treatment notes form Dr. Intihar (Tr. 27, 54-60).  The ALJ found Dr. Arkin's reconsideration opinion that Plaintiff could perform medium work with frequent postural activities only partially persuasive (Tr. 27, 70-74).  Importantly, the ALJ stated that, though "physical examinations were overwhelmingly normal," the ALJ limited Plaintiff "to light work with environmental limitations and greater postural limitations in an abundance of caution and in viewing the evidence in the light most favorable to the claimant" (Tr. 27).  The ALJ therefore gave Plaintiff the benefit of the doubt in considering Plaintiff's physical limitations despite the lack of support in the record for greater limitations.

Next, the ALJ considered the opinions from Dr. Grubbs and Dr. Prickett, the state agency medical consultants considering Plaintiff's mental impairments and limitations (Tr. 27, 58-59, 63-70).  As the ALJ noted, both Dr. Grubbs and Dr. Prickett opined that Plaintiff had no severe mental impairments (Tr. 27, 58-59, 63-70).  While the ALJ found the opinions generally supported by the consultative psychological examination conducted by Dr. Ramirez, the ALJ did not find the opinions of Dr. Grubbs and Dr. Prickett completely persuasive, given Plaintiff's ongoing complaints of anxiety (Tr. 27).  The record supports the ALJ's conclusion, and, again, the ALJ afforded Plaintiff the benefit of the doubt in including limitations related to Plaintiff's mental impairments.

After that, the ALJ discussed Dr. Intihar's opinion, finding it unpersuasive (Tr. 27).  The ALJ appropriately determined that Dr. Intihar's opinion was not supported by Dr. Intihar's treatment notes, which, as discussed above, documented normal

examination findings and a conservative course of treatment.  In addition, the ALJ appropriately concluded that Dr. Intihar's opinion was neither supported by Dr. Shoemaker's consultative examination nor by any other records.

Finally, the ALJ discussed Dr. Stanley's opinion (Tr. 27).  As the ALJ indicated, although Dr. Stanley related his findings back to the period prior to the date last insured, Dr. Stanley rendered his opinion after the date last insured and based his opinion upon an examination conducted after the date last insured.  To be eligible for DIB, a claimant must demonstrate disability on or before the last date for which he or she was insured.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam); *see* 42 U.S.C. §§ 416(i)(3), 423(a) & (c); 20 C.F.R. §§ 404.101, 404.130, 404.131. "Evidence is irrelevant and immaterial when it relates to a time period after the eligibility determination at issue." *Carroll v. Soc. Sec. Admin., Comm'r*, 453 F. App'x 889, 892 (11th Cir. 2011)  (citation omitted); *see McClain v. Comm'r, Soc. Sec. Admin.*, 676 F. App'x 935, 938 (11th Cir. 2017) (noting that an ALJ did not err by failing to address evidence that discussed the claimant's condition outside the time frame that the claimant would qualify for benefits since the ALJ was tasked with determining whether the claimant was disabled between the onset date and the date last insured); *Adamo v. Comm'r of Soc. Sec.*, 365 F. App'x 209, 213 (11th Cir. 2010) (upholding the ALJ's decision to reject a physician's report in its entirety where, among other things, the opinion relied upon evidence created after the date last insured).  The ALJ therefore did not err in finding Dr. Stanley's opinion unpersuasive on that ground.  Going further, the ALJ correctly concluded that Dr. Stanley's opinion was

unpersuasive as it was inconsistent with any evidence prior to the date last insured, including the consultative psychological examination and lack of mental health treatment. *See Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 832 (11th Cir. 2011) ("Where the medical record contained a retrospective diagnosis, that is, a physician's post-insured-date opinion that the claimant suffered a disabling condition prior to the insured date, we affirm only when that opinion was consistent with pre-insured-date medical evidence.") (citations omitted).

Against that backdrop, I find that the ALJ properly considered the medical evidence and medical opinions of record in concluding that Plaintiff's subjective complaints were not as limiting as alleged and that Plaintiff maintained the ability to perform a reduced range of light work with the expressed limitations set forth by the ALJ in the RFC assessment. The ALJ provided substantial evidence in support of his findings and applied the correct legal standards. Consequently, Plaintiff's argument that the ALJ somehow failed to include any further limitations in the RFC or in the hypotheticals posed to the VE necessarily fails. Remand is thus not warranted on either issue.

*IV.     Conclusion*

For the foregoing reasons, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence. Accordingly, after consideration, it is hereby

ORDERED:

1.      The decision of the Commissioner is AFFIRMED.

2.      The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 28th day of July, 2023.

_Mark A. Pizzo_

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

cc:     Counsel of Record